IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| METROPOLITAN ST. LOUIS EQUAL HOUSING OPPORTUNITY COUNCIL, A MISSOURI NONPROFIT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LIGHTHOUSE LODGE, LLC, et al.<br><br>Defendants. | Case No. 2:09-cv-04019-NKL |

**O R D E R**

Plaintiff Metropolitan St. Louis Equal Housing Opportunity Council ("EHOC") brings this action against Defendants Lighthouse Lodge, LLC; Davidson Construction & Development, Inc.; Lighthouse Lodge Development Co., LLC ("Lighthouse Lodge"); and Robert Russell, d/b/a Robert Russell, Architect (collectively "Defendants"). EHOC's first amended complaint [Doc. # 13] includes three counts, all dealing with the question of whether the Lighthouse Pointe Condominiums are accessible to people with disabilities. First, EHOC alleges that Defendants failed to satisfy the accessibility requirements of the Missouri Human Rights Act ("MHRA"). Second, EHOC alleges that the complex's inaccessibility amounts to housing discrimination against persons with disabilities in violation of the Fair Housing Act ("FHA"). Finally, EHOC alleges Defendants violated the Americans with Disabilities Act ("ADA") by failing to design and construct Lighthouse

1

Pointe Condominiums so that all areas of public accommodation are readily accessible and useable by persons with disabilities. EHOC seeks declaratory and injunctive relief, as well as recovery of actual and punitive damages, costs, and attorney's fees. The complete facts and arguments are presented in the parties' briefs and pleadings, and they will be duplicated here only to the extent necessary.

The matter now pending before this Court is Defendant Lighthouse Lodge's motion to dismiss and motion to strike Plaintiff's first amended complaint [Doc. # 18]. For the following reasons, Defendant Lighthouse Lodge's motion to dismiss is GRANTED as to Counts I and III and DENIED as to Count II. The motion to strike Plaintiff's first amended complaint is DENIED as to Count II and moot as to Counts I and III.

## I. Factual and Procedural Background

EHOC is a nonprofit corporation serving Missouri and Illinois which receives a large portion of its funding from the United States Department of Housing and Urban Development ("HUD"). Its mission is to ensure equal access to housing through education, counseling, advocacy, investigation, and enforcement.

Lighthouse Pointe Condominiums is a complex of lakeside multi-family covered dwelling units in Lake Ozark, Missouri. Defendants each were involved in the design, development, and/or construction of the complex. The common areas of the complex include certain areas of public accommodation, including swimming pools, parking areas, restrooms, pathways, boat slips, club houses, and sales offices. The sale of the last available unit in the complex occurred on or about June 29, 2006. EHOC filed a complaint [Doc. # 1, ex. # 1] on

December 31, 2008, which was amended on February 16, 2009 [Doc. # 13]. The amended complaint alleges at least 34 specific ways in which the complex and its common areas are noncompliant with various statutes protecting persons with disabilities from housing discrimination and ensuring them equal access to housing and public accommodations. Without discussing in detail that long list of deficiencies, it includes things like stairways with no wheelchair ramps, thresholds exceeding three quarter inches, thermostats and kitchen cabinets too high off the floor, inadequate floor space for wheelchair maneuvering, a lack of accessible parking spaces, failure to install grab bars in public restrooms, and grading from the units to boat slips that is too steep for wheelchairs.

EHOC asks this Court to grant it declaratory judgment that the complex is noncompliant with the MHRA, FHA, and ADA and that its owners have discriminated unlawfully against persons with disabilities. It also seeks injunctive relief to ensure that the complex is brought into compliance with the MHRA, FHA, and ADA. As to its actual damages, EHOC claims it "has diverted considerable resources to investigate the subject property and to engage in testing of the subject property [and] into pursuing administrative remedies and this cause of action." EHOC also asks this Court to award it punitive damages on Counts I and II "so that [Defendants] and others may be deterred from violating the design and construction mandates of the [MHRA and FHA] and otherwise ignoring the laws as they pertain to fair housing, civil rights, and disabilities." Finally, EHOC seeks to recover costs and attorney's fees incurred in this action before administrative agencies and courts.

## II. Discussion

Lighthouse Lodge's motion to dismiss will be treated as a motion for judgment on the pleadings because it has already filed an answer [Doc. # 16] to EHOC's first amended complaint.[1] Lighthouse Lodge alternatively asks this Court to strike certain portions of EHOC's first amended complaint, apparently on the grounds that they are improperly pleaded.

When considering a motion for judgment on the pleadings, the court accepts as true all facts pleaded by the nonmoving party and grants all reasonable inferences from the pleadings in favor of the nonmoving party. *See Syverson v. FirePond, Inc.*, 383 F.3d 745, 749 (8th Cir. 2004) (citation omitted). "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Id.* (citation omitted). The standard of review for a Rule 12(c) motion is essentially the same as for Rule 12(b)(6). *See Wescott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 546.

### A. Count I is Barred by the Missouri Human Rights Act's Statute of Limitations

---

[1]Technically, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) cannot be filed after the filing of an answer, and the appropriate motion is a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). Fed. R. Civ. P. 12(h)(2) provides that "a defense of failure to state a claim upon which relief can be granted may be made by motion for judgment on the pleadings" (ellipses omitted). *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

Lighthouse Lodge correctly points out that any court action under section 213.111 of the MHRA "shall be filed within 90 days from the date of the [Missouri Human Rights Commission's Right to Sue Letter] but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party." Missouri Human Rights Act, MO. REV. STAT. § 213.111.1 (Vernon 2009). EHOC misinterprets case law when it says, "The 'statute of limitations begins to run when the letter is issued.'" [Doc. # 28 at ¶ 2] (quoting *Hammond v. Mun. Corr. Inst.*, 117 S.W.3d 130, 133 (Mo. App. W.D. 2003). The *Hammond* court was merely clarifying that no time is added to the statute of limitations for the time the Right to Sue Letter spends in the mail. 117 S.W.3d at 133. The case does not remove the absolute requirement that any action must be brought in court within two years of the injury or its reasonable discovery. *See id.* The MHRA's statute of limitations is to be strictly construed. *Swartzbaugh v. State Farm Ins. Cos.*, 924 F. Supp. 932, 934 (E.D. Mo. 1995) (citing *Hill v. John Chezik Imps.*, 797 S.W.2d 528, 530 (Mo. App. E.D. 1990)).

The Missouri Human Rights Commission issued EHOC a Right to Sue Letter on November 21, 2008. Forty days later, on December 31, 2008, EHOC filed suit in the Missouri Circuit Court for Miller County, and that action was eventually removed to this Court. However, the sale of the final unit in the Lighthouse Pointe Condominium complex was completed on June 29, 2006. Nowhere does EHOC dispute June 29, 2006, as the date of the alleged injury or its reasonable discovery, so this Court finds that the statute of limitations expired two years after that date: June 29, 2008. EHOC filed its suit more than six months too late, and its claim is therefore barred as matter of law.

5

Lighthouse Lodge makes two other arguments as to why portions of Count I are improperly pleaded and should therefore be stricken, but this Court declines to consider those arguments, as the entire count is barred by section 213.111.1 of the MHRA.

**B.     Lighthouse Lodge's Motion is Denied as to Count II**

*1.     Judgment on the Pleadings Cannot Be Awarded on the Issue of Standing under the Fair Housing Act*

Lighthouse Lodge asks this Court to dismiss Count II of the complaint because EHOC lacks standing under the FHA because it is not the "aggrieved person" subjected to the alleged discrimination [Doc. # 19 at p. 3; Doc. # 35 at ¶ 7]. The FHA defines "aggrieved person" as "any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." Fair Housing Act, 42 U.S.C. § 3602(i) (West 2009). Contrary to Lighthouse Lodge's assertion, the word "person" in the FHA does not refer exclusively to individuals; a corporation like EHOC can also be a "person" under the Act. *See id*. at § 3602(d).

The Supreme Court has held that the only standing requirement for an organization such as EHOC to sue in its own right under the FHA is injury in fact. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372, 378 (1982). This requirement is satisfied any time an organization can allege "distinct and palpable injuries" which are "fairly traceable" to the actions of a defendant. *See id*. at 376. *See also Ark. ACORN Fair Hous., Inc. v. Greystone Dev., Ltd. Co.*, 160 F.3d 433, 434 (8th Cir. 1998). While an organization cannot manufacture

6

those "distinct and palpable injuries" based solely on expenditures arising out of the very lawsuit for which it is claiming standing, the burden may be satisfied by pleading "that purportedly illegal action increases the resources the group must devote to programs independent of its suit challenging the action." *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) (citing *Havens*, 455 U.S. at 379). *But cf. High Plains Cmty. Dev. Corp. v. Schaefer*, No. 4:07-CV-3149, 2008 WL 1990773 at *2 n.7 (D. Neb. 2008) (acknowledging the validity of such a theory of standing, but excluding "testing and investigative expenses" from the expenses incurred independent of a civil suit when those expenses were itemized as copies, mailings, application fees, and a trip to Omaha for a deposition on the grounds that those expenses were merely preparation for the pending litigation).

Here, EHOC claims to have been injured by the discriminatory housing practice of noncompliant construction and design because it has "diverted considerable resources to investigate the subject property and to engage in testing of the subject property to determine compliance" with the MHRA, FHA, and ADA. These allegedly diverted resources are not specified or itemized, and EHOC does not make clear whether the expenses would have been incurred but for their decision to bring an administrative complaint and, eventually, this civil action. Nowhere else in its complaint or briefs does EHOC allege any other "discrete and palpable injury" attributable to Defendants' alleged FHA violations,[2] and EHOC makes no

---

[2] EHOC does mention that it has diverted resources to pursuing administrative remedies as well as this cause of action, but those are clearly the type of manufactured injuries on which standing cannot rest, because that interpretation would allow any person or organization to sue and to use the resources expended on that suit as the "injury in fact" that satisfies the Article III standing requirement. *See Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) (citing *Havens*,

7

response to Lighthouse Lodge's claim that EHOC lacks standing under the FHA. It is an open question whether the resources that EHOC claims it spent on investigation and testing of the subject property were anything more than preliminary expenses for this litigation. However, drawing all inferences in EHOC's favor, it seems plausible that these expenses could be distinct from this litigation, in which case they would amount to a distinct and palpable injury that is fairly traceable to Defendants' alleged FHA violations. To award judgment on the pleadings on the issue of standing would be premature.

### 2. *The Fair Housing Act's Statute of Limitations Does Not Bar Count II*

The FHA provides that any complaint to the Secretary of Housing and Urban Development of an allegedly discriminatory housing practice should be made within one year of the practice's occurrence or termination. Fair Housing Act, 42 U.S.C. § 3610(a) (West 2009). Civil actions brought in District Court under the FHA must be brought within two years of the alleged discriminatory housing practice's occurrence or termination. *Id.* at § 3613(a)(1)(A). The computation of that two-year period does not include any time during which an administrative proceeding related to that alleged discriminatory housing practice was pending. *Id.* at § 3616(a)(1)(B). However, the FHA also imposes a requirement on the Secretary that any administrative complaint should be resolved within 100 days. *Id.* at § 3610(g)(1). Where resolution within 100 days is impracticable, the Secretary is to send written notice to both the complainant and respondent of the reason for the delay. *Id.*

---

455 U.S. at 379). EHOC also asserts, without substantiation, that Defendants' action constitutes "a denial to Plaintiff [. . .] of the rights granted [. . .] by the Fair Housing Act," but this bald assertion hardly rises to the level of "discrete and palpable injury."

8

Lighthouse Lodge claims that when HUD fails to resolve an administrative complaint within 100 days and also fails to notify the parties of the reason for not doing so, as required by section 3610(g), the one year statute of limitations should be tolled only for the first 100 days the matter is before HUD. It cites *United States v. Aspen Square Management Co., Inc.*, 817 F. Supp 707 (N.D. Ill. 1993), for the proposition that failure by HUD to comply with subsection (g) serves as a jurisdictional bar to District Courts, but fails to note that that order was later vacated by the District Court judge who issued it. *See United States. v. Aspen Square Mgmt. Co., Inc.*, no. 92-c-7579, 1993 WL 268352 (N.D. Ill. 1993). Additionally, that order has been heavily criticized by numerous courts, including the very District Court from which the case originated. *See, e.g. United States. v. Beethoven Assocs. Ltd. P'ship*, 843 F. Supp. 1257, 1260-63 (N.D. Ill. 1994) (noting first that the plain language of subsection (g) does not impose a jurisdictional bar to District Courts, and second that the purpose of subsection (g) is to expedite HUD claims – not to limit plaintiffs' chance to appeal HUD decisions to District Courts); *United States v. Tropic Seas, Inc.*, 887 F. Supp. 1347, 1363 (D. Haw. 1995) ("[*Aspen*] appears to be contrary to the clear weight of authority from other districts, and has even been criticized by other judges in the same district."); *United States v. Barberis*, 887 F. Supp. 110, 115-16 (D. Md. 1995) (referring by analogy to time limitations on agency action imposed by numerous other statutes and citing cases that find that failure by the agencies to comply with the limitations is not a jurisdictional bar); *United States v. Sea Winds of Marco, Inc.*, 893 F. Supp. 1051, 1054 (M.D. Fla. 1995) ("Procedural violations, such as failure to notify defendants of HUD's need for additional time to investigate

9

complaints, are not necessarily detrimental to subsequent actions to enforce the Fair Housing Act."). Indeed, at least one United States Court of Appeals has held that HUD's failure to comply with subsection (g) is not grounds for dismissal when the statute of limitations would otherwise not have expired. *See Baumgardner v. Sec'y, United States Dep't of Hous. and Urban Dev. on Behalf of Holley*, 960 F.2d 572, 576-78 (6th Cir. 1992).

In the instant case, HUD clearly failed to issue a ruling within 100 days – in fact, it took the agency more than 18 months – and also appears to have failed to notify either party of the reason for the delay. The alleged injury occurred or was reasonably discovered on June 29, 2006, the date of the sale of Lighthouse Pointe's final condominium. Three hundred and five (305) days later EHOC filed a complaint with HUD; this was well within the FHA's time limitation for such a filing. *See* 42 U.S.C. § 3610(a). The matter remained before HUD until it issued a Right to Sue Letter on November 21, 2008. This suit was originally filed December 31, 2008. The question is whether or not that filing was within the two year statute of limitations imposed by the FHA for such actions. *See id*. This Court is unconvinced by Lighthouse Lodge's arguments and authority as to why EHOC should be punished for HUD's procedural delinquency, and it is highly persuaded by the logic of the Sixth Circuit and the numerous District Courts that have agreed with EHOC that the statute of limitations should be tolled for the entire time a proceeding is before HUD. Therefore, the entire time the proceeding was delayed by HUD will be subtracted in calculating the two years in which EHOC was allowed to bring suit. Thus, adding the 305 days between the occurrence of the alleged discrimination and the filing of a HUD complaint to the 40 days

10

between the issuance of HUD's Right to Sue Letter and EHOC's filing of a civil action, it is clear that EHOC filed suit well within the statutory period.

### *3. No Portion of Count II Should Be Stricken*

Lighthouse Lodge appears to be asking this Court to strike EHOC's request for injunctive relief because EHOC's complaint "fails to allege [. . .] immediate and irreparable harm, and as such no injunctive relief can be granted." Lighthouse Lodge cites no authority and appears to have confused the pleading requirement for a preliminary injunction with the standard for injunctive relief as a post-judgment remedy. *See Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734, 738 (8th Cir.1989) (en banc) (failure to demonstrate immediate and irreparable harm is adequate grounds to deny *preliminary* injunction). As EHOC correctly notes, there is no specific pleading requirement for injunctive relief. *See* Fed. R. Civ. P. 8(e)(1). In FHA actions courts may grant injunctive relief as they deem appropriate. 42 U.S.C. § 3613(c)(1)(d). Lighthouse Lodge has offered no valid reason why any portion of Count II should be stricken.

### C. The Equal Housing Opportunity Commission Lacks Standing to Bring a Civil Action under the Americans with Disabilities Act

Lighthouse Lodge argues that Count III of EHOC's complaint should be dismissed because EHOC is not "a person who is subjected to discrimination on the basis of disability in violation of [the ADA]" and therefore lacks standing under the ADA. EHOC's reply brief is non-responsive; it argues about the requirements for Article III standing to bring any action before a United States District Court and says nothing about the particular standing

11

requirements imposed by the ADA [Doc. # 28, ¶¶ 17-19]. The case law cited by EHOC also deals with Article III standing in general and provides no insight into what is required for organizational standing under the ADA.

The ADA provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of [. . .] any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Americans with Disabilities Act, 42 U.S.C. § 12182(a) (West 2009). The Act further provides that "it shall be discriminatory to subject an individual or class of individuals on the basis of a disability [. . .] to a denial of the opportunity of the individual or class to participate in or benefit from the [. . .] facilities, [. . .] or accommodations of an entity." *Id.* at § 12182(b)(1)(A)(i). The regulations governing enforcement of the ADA use similar language. *See* 28 C.F.R. § 36.501(a) (granting a right of action to "any individual" who is the victim of disability discrimination). The ADA defines "individual or class of individual" as "the clients or customers of the covered public accommodation." 42 U.S.C. § 12182(b)(1)(A)(iv).

Generally, an organization may assert standing in one of two ways: (1) on its own behalf, in much the same way as an individual would, because it has suffered a palpable injury as a result of the defendants' actions; or (2) as the representative of its members who have allegedly been subjected to discrimination. *See Hunt v. Wash. Apple Adver. Comm'n*, 432 U.S. 333, 341-43 (1977). However, the Eighth Circuit recently held that a federally funded advocacy organization lacks associational standing to bring a suit under the ADA to assert statutory rights on behalf of persons with disabilities when that suit is not brought on

12

behalf of specific individuals who have suffered concrete harm as a result of the alleged discrimination. *See Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 809 (8th Cir. 2007) (citing with approval *Tenn. Prot. & Advocacy, Inc. v. Bd. of Educ. of Putnam County, Tenn.*, 24 F. Supp. 2d 808, 815-16 (M.D. Tenn. 1998)).

EHOC is unquestionably not a "client or customer" of Defendants or their condominium complex. Thus, EHOC does not qualify as an "individual or group of individuals" under the ADA. *See* 42 U.S.C. § 12182(b)(1)(A)(iv). Nor is EHOC suing on behalf of any specific victim of Defendants' alleged discrimination. It argues that it has associational standing because it has suffered the palpable injuries of "diversion of resources and interference with mission" [Doc. # 28, ¶ 19]. Despite this Court's previously expressed doubts about the validity of those alleged injuries as a source of Article III standing, they certainly fall outside of the specific statutory rights for which a private right of action is granted under the ADA.[3] *See* 42 U.S.C. §§ 12182(a)-12182(b). Regardless of whether

---

[3]The reason that the alleged diversion of EHOC's resources is sufficient injury in fact to survive judgment on the pleadings on the issue of FHA standing but insufficient on the issue of ADA standing stems from the types of injuries each act seeks to remedy. Case law provides some authority for the proposition that any injury in fact – even mere diversion of resources – caused by allegedly unfair housing practices can establish standing under the FHA. *See Havens*, 455 U.S. at 379 (finding injury in fact when Defendants' alleged discrimination forced Plaintiff organization "to devote significant resources to identify and counteract the [. . .] racially discriminatory steering practices."); *Spann*, 899 F.2d at 27 (finding injury in fact when Plaintiffs were allegedly forced to devote more time and resources to education in a particular apartment complex that was the subject of allegedly discriminatory advertising). With respect to the ADA, however, the Eighth Circuit has specifically held that associational standing will not be granted to associations that have not suffered discrimination unless the association sues on behalf of specific individuals who have been the victims of the particular kind of discrimination prohibited by the ADA – in this case, denial of access to public accommodations. *See Mo. Prot. and Advocacy Servs.*, 499 F.3d at 809-12 (holding that an ADA action brought by a federally-funded advocacy organization "may not properly go forward without the participation of one or more

13

EHOC has Article III standing to come before this Court at all, it undoubtedly lacks standing to bring an ADA action, given that this suit was not brought on behalf of any disabled individual and that EHOC never alleges that it suffered any denial of access to any public accommodation. *See Mo. Prot. & Advocacy Servs.*, 499 F.3d at 809-12.

Lighthouse Lodge makes another argument as to why portions of Count III are improperly pleaded and should therefore be stricken, but this Court declines to consider that argument, as the standing issue is sufficient to resolve the entirety of Count III.

### III. Conclusion

Accordingly, it is hereby

ORDERED that Defendant Lighthouse Lodge Development, Co., LLC's motion to dismiss [Doc. # 18] is GRANTED as to Counts I and III and DENIED as to Count II. The alternative motion to strike Plaintiff's first amended complaint is DENIED as to Count II and moot as to Counts I and III.

 s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  June 4, 2009
Jefferson City, Missouri

---

individual[s] [. . .] with specific claims.").